**Service of Process Transmittal**
12/20/2011
CT Log Number 519673975

TO:     Leslie Dallas
        Saint-Gobain Corporation
        750 Swedesford Road
        Valley Forge, PA 19482

RE:     **Process Served in Arkansas**

FOR:    CertainTeed Corporation (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Ann Hocutt, et al., Pltfs. vs. CertainTeed Corporation, et al., Dfts. |
| **DOCUMENT(S) SERVED:** | Letter, Summons, Complaint |
| **COURT/AGENCY:** | Washington County Circuit Court, AR<br>Case # CV1134675 |
| **NATURE OF ACTION:** | Class Action - CertainTeed WeatherBoards Fiber Cement exterior siding installed since 2007 to the present |
| **ON WHOM PROCESS WAS SERVED:** | CT Corporation System, Little Rock, AR |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 12/20/2011 postmarked on 12/16/2011 |
| **JURISDICTION SERVED :** | Arkansas |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days from the date of service |
| **ATTORNEY(S) / SENDER(S):** | Jay Bequette<br>Bequette & Billingsley<br>Metropolitan National Bank Tower<br>425 W. Capitol Avenue<br>Suite 3200<br>Little Rock, AR 72201-3469<br>501-374-1107 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 12/20/2011, Expected Purge Date: 12/25/2011<br>Image SOP<br>Email Notification, Kathy McKnight kathleen.mcknight@saint-gobain.com<br>Email Notification, Brenda Robertson brenda.robertson@saint-gobain.com<br>Email Notification, Leslie Dallas leslie.dallas@saint-gobain.com<br>Email Notification, Nancy Semigran anne.b.semigran@saint-gobain.com |
| **SIGNED:** | CT Corporation System |
| **PER:** | Amy McLaren |
| **ADDRESS:** | 124 West Capitol Avenue<br>Suite 1900<br>Little Rock, AR 72201-3736 |
| **TELEPHONE:** | 800-592-9023 |

Page 1 of  1 / KM

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

IN THE CIRCUIT COURT OF WASHINGTON COUNTY, ARKANSAS

## SUMMONS

ANN HOCUTT; HEATHER M. HAWKINS; MARTIN SMITH and LINDA SMITH, his wife;
and LIBBY GIBSON, on behalf of themselves and all others similarly situated     PLAINTIFFS

v.                         No. CV11·3467· 5

CERTAINTEED CORPORATION; LAKEWOOD HOMES, LLC;
TK & S SPECIALTY, INC.; and
STOCK BUILDING SUPPLY OF ARKANSAS, LLC                      DEFENDANTS

Plaintiffs' Attorney:          Jay Bequette
                               Bequette & Billingsley, P.A.
                               425 West Capitol Avenue, Suite 3200
                               Little Rock, AR 72201-3469
                               (501) 374-1107

**THE STATE OF ARKANSAS TO DEFENDANT:**          **CERTAINTEED CORPORATION**

## NOTICE

1.  You are hereby notified that a lawsuit has been filed against you; the relief asked is stated in
    the attached Complaint.

2.  The attached Complaint will be considered admitted by you and a judgment by default may
    be entered against you for the relief asked in the Complaint unless you file a written answer
    or a motion under Rule 12 of the Arkansas Rules of Civil Procedure and thereafter appear
    and present your defense. Your pleading or answer must meet the following requirements:

    A.  It must be in writing, and otherwise comply with the Arkansas Rules of Civil
        Procedure.
    B.  It must be filed in the Circuit Court Clerk's Office within TWENTY (20) days from
        the day you were served with this summons.
    C.  A copy of your response must be delivered or mailed to the plaintiff or his/her
        attorney.

3.  If you desire to be represented by an attorney, you should immediately contact your attorney
    so that a response can be filed for you within the time allowed.

WITNESS my hand and the seal of the Court this 12 day of December, 2011.

CIRCUIT COURT CLERK

(SEAL)

By: _____, D.C.

## Return of Service

On the _____ day of _____, 2011, I have duly served the within _____
by delivering a copy and stating the substance thereof, to the within named _____
in the county of _____, as I am hereby commanded.

_____, SHERIFF

By: _____, D.S.

Filed the _____ day of _____, 2011.

CIRCUIT COURT CLERK

By:_____, D.C.

-2-

IN THE CIRCUIT COURT OF WASHINGTON COUNTY, ARKANSAS

ANN HOCUTT; HEATHER M. HAWKINS;
MARTIN SMITH and LINDA SMITH, his wife;
and LIBBY GIBSON, on behalf of themselves
and all others similarly situated                                         PLAINTIFFS



v.                                    No. CVll·3467·5

CERTAINTEED CORPORATION;
LAKEWOOD HOMES, LLC; TK & S SPECIALTY, INC.;
and STOCK BUILDING SUPPLY OF ARKANSAS, LLC                    DEFENDANTS

## COMPLAINT

Plaintiffs, by their attorneys, Bequette & Billingsley, P.A., for their Complaint against the

Defendants, allege and state:

### NATURE OF ACTION

1.      This is a class action against CertainTeed Corporation ("CertainTeed"), as the

manufacturer of CertainTeed WeatherBoards Fiber Cement exterior siding, Lakewood Homes, LLC

("Lakewood") as the builder and seller of homes purchased by Plaintiffs and the Class, Stock

Building Supply of Arkansas, LLC ("Stock"), on information and belief, as the distributor of the

siding used in the construction of the homes purchased by Plaintiffs and the Class, and TK&S

Specialty, Inc. ("TK&S"), on information and belief, as the installer of the siding used in the

construction of the homes purchased by Plaintiffs and the Class, on behalf of all persons and entities

who owned, own, or acquired homes, residences, buildings, or other structures physically located

in the Lakewood Subdivision, Washington County, Arkansas, on which CertainTeed WeatherBoards

Fiber Cement exterior siding ("Siding") has been installed since 2007 to the present.

2.      At all times material hereto, CertainTeed manufactured and marketed the Siding, and such products have been represented, marketed and warranted by CertainTeed to be durable, long-lasting, and appropriate for use on the homes and other structures of Plaintiffs and the Class.

3.      However, in contrast to CertainTeed's warranties and representations concerning their Siding board, the product is severely defective and problematic. CertainTeed WeatherBoard Fiber Cement is not impervious to moisture invasion and degradation. It cracks, warps, rots, buckles, discolors, delaminates, deteriorates and otherwise does not perform as expressly warranted and represented. Nevertheless, CertainTeed continues to sell it to the public and continues to make their false representations and warranties, despite the fact that the product has caused, and will eventually cause consumers enormous property damage and substantial removal and replacement costs.

4.      As a result of CertainTeed's defective product, and Defendants' acts and omissions which caused Plaintiff and the Class members extensive damages, this class action seeks damages, punitive damages, injunctive relief, costs, attorneys' fees, and any other relief available.

### INTRODUCTION AND BACKGROUND

5.      Prior to 2002, CertainTeed designed, manufactured, and distributed the Siding using grain and silica sand as core materials. Upon information and belief, CertainTeed changed its design and/or formula in or around 2002 and began to use fly ash instead of grain and silica in its Siding. Fly ash is an industrial by-product of coal burning power plants and costs less than cement, so its use by CertainTeed lowered the cost of concrete utilized in the manufacture of the Siding. In addition, upon information and belief, CertainTeed received large federal tax breaks by using fly ash in its Siding. However, the defective change in design and/or formulation resulted in water absorption,

-2-

porosity problems, and other uniform defects alleged herein - none of which were inherent in the pre-2002 grain and silica sand formulations.

6.      CertainTeed's sales and marketing brochures and literature concerning the Siding, which were widely distributed to building professionals who installed the Siding and generally available to the Class at the time of the sale, provide, among other things, that the Siding "is engineered for decades of superior protection, wear and durability and is backed with a century-long tradition of excellence and customer satisfaction, and "When we say CertainTeed, we mean quality made certain, satisfaction guaranteed."

7.      Certain Teed further represents that its Siding "LASTS LONGER," "OUTPERFORMS THE OTHERS" and that "it's built to take on the elements and then some." Notably, CertainTeed claims that its Siding has superior freeze/thaw protection, protects against damaging moisture and resists everyday bumps and harmful impacts.

8.      CertainTeed markets and warrants its Siding as durable, and as offering long-lasting protection for a specified life of 50 years. Plaintiff and the putative Class members appropriately relied on the warranty and marketing nomenclature to mean that this product, with a 50-year warranty, was expected to have a usable life time of at least 50 years. However, CertainTeed's Siding has not lived up to its warranty due to early and persistent failures which require expensive and unexpected repair, maintenance and replacement.

9.      CertainTeed represented to Plaintiff and the Class in documents available to the public that its Siding would last for 50 years without problems, or that CertainTeed would remedy the situation. CertainTeed made this representation before purchase and at the time of purchase via sales brochures and marketing materials discussed herein.

10.     Upon information and belief, CertainTeed discovered that its new Siding, with the addition of fly ash, was defective which caused it to absorb water, crack, warp and cause other major problems. Due to these defects, as the Siding goes through freeze thaw cycles, it experiences increased expansion and contraction as a result of excess moisture in the product; which causes the uniform defects alleged herein.

11.     In addition, the Siding manufactured by CertainTeed is so defectively designed and manufactured that it prematurely fails and causes damages to the underlying structures and other property of the Plaintiff and the Class; and it lowers the value of property.

12.     The defects present in CertainTeed Siding are so severe that Plaintiff and members of the Class must repair or replace their Siding sooner than reasonably expected by ordinary consumers who purchase siding generally and by consumers who purchased CertainTeed's Siding.

13.     All of CertainTeed's Siding is uniformly defective such that Plaintiffs' and Class members' Siding is failing before the time periods advertised, marketed, guaranteed and warranted by CertainTeed or otherwise expected by ordinary consumers purchasing siding.

14.     Defendants knew or reasonably should have known the Siding is defective. Because the Siding cracks, warps, discolors, rots, and shrinks, it is neither durable nor suitable for use as a building product.

15.     CertainTeed's Siding has not lived up to the CertainTeed representations and warranties and, given the premature and severe deterioration that requires unexpected maintenance, wear and replacement, has not proven to be of value when compared to other siding products.

## PARTIES

16.     Plaintiff, Ann Hocutt, is a resident of the State of Arkansas and resides in Washington County, Arkansas.

17.     In 2008, Plaintiff Hocutt acquired her home in the Lakewood Subdivision.  Plaintiff Hocutt's home was constructed by Lakewood using CertainTeed WeatherBoards Fiber Cement siding.  Upon information and belief, the Siding was distributed by Stock and installed by TK&S.  Within three years of the installation, the Siding on Plaintiff Hocutt's home began to warp, crack, shrink and deteriorate.

18.     Plaintiff, Heather M. Hawkins, is a resident of Washington County, Arkansas.

19.     In 2008, Plaintiff Hawkins purchased a home in the Lakewood Subdivision from Lakewood.   Plaintiff Hawkin's home was constructed by Lakewood using CertainTeed WeatherBoards Fiber Cement siding. Upon information and belief, the Siding on Plaintiff Hawkin's home was distributed by Stock and installed by TK&S.  Within three years of the installation, the Siding on Plaintiff Hawkin's home began to warp, crack, shrink and deteriorate.

20.     Plaintiffs Martin Smith and Linda Smith, his wife, and Libby Gibson (collectively "Smith/Gibson"), are residents of Washington County, Arkansas.

21.     In 2008, Plaintiffs Smith/Gibson purchased a home in the Lakewood Subdivision from Lakewood.   Smith/Gibson's home was constructed by Lakewood using CertainTeed WeatherBoards Fiber Cement siding.  Upon information and belief, the Siding on Smith/Gibson's home was distributed by Stock and installed by TK&S.  Within three years of the installation, the Siding on Smith/Gibson's home began to warp, crack, shrink and deteriorate.

-5-

22.     Defendant, CertainTeed Corporation, is a corporation with its principal place of business located at 750 E. Swedesford Road, Valley Forge, Pennsylvania 19482. CertainTeed is a leading North American manufacturer of building materials including roofing, siding, insulation, windows, patio doors, fence, decking, railing, foundations, and pipe.   The company has approximately 7,000 employees and more than 40 manufacturing facilities throughout the United States. CertainTeed sells Siding throughout the United States, including in the State of Arkansas.

23.     Defendant, Lakewood Homes LLC ("Lakewood"), is a limited liability company organized pursuant to the laws of the State of Arkansas with its principal place of business located in Washington County, Arkansas.

24.     Defendant, TK&S Specialty, Inc. ("TK&S"), is a corporation organized pursuant to the laws of the State of Arkansas with its principal place of business located in Benton County, Arkansas.

25.     Defendant, Stock Building Supply of Arkansas, LLC, d/b/a National Home Centers and Stock Building Supply, is a limited liability company organized pursuant to the laws of the State of Delaware, with its principal place of business in Arkansas located in Washington County, Arkansas.

## JURISDICTION AND VENUE

26.     Subject matter jurisdiction is proper pursuant to Section 6 of Amendment 80 of the Arkansas Constitution. This Court has jurisdiction over the parties pursuant to the Ark. Code Ann. § 16-4-101, in that Plaintiffs reside in the State of Arkansas and Defendants have conducted business in Arkansas. Venue is proper in this court pursuant to Ark. Code Ann. §§ 16-60-101, *et seq.*

27.     Furthermore, as a result of Defendants' manufacturing, marketing, distributing, promoting and/or selling, either directly or indirectly through third parties or related entities, of their Siding to purchasers, including Plaintiffs, throughout Arkansas, Defendants obtained the benefits of the laws of Arkansas and profited from Arkansas commerce.

28.     Defendants conducted systematic and continuous business activities in the State of Arkansas and otherwise intentionally availed themselves of the markets of the State of Arkansas through the promotion and marketing of their business to consumers in Arkansas, including Plaintiffs.

29.     Defendants conduct substantial business in Washington County, Arkansas, including the marketing, sale and distribution of the Siding in Washington County, Arkansas. Moreover, the Siding was installed on the homes of Plaintiffs and the Class which are located within Washington County, Arkansas. Consequently, venue is proper in Washington County, Arkansas.

### FACTUAL ALLEGATIONS

**A.     CertainTeed's Refusal to Notify Customers that Defects and Failures Are Associated with Its Siding.**

30.     Upon information and belief, CertainTeed has received thousands of warranty claims alleging the same design and/or manufacturing defect which is the subject of this action. Upon information and belief, some of these warranty claims have been improperly rejected and other of the warranty claims have been settled in a manner not strictly consistent with the warranty terms.

31.     Despite receiving complaints from consumers, such as Plaintiffs and other members of the Class, CertainTeed has refused to convey effective notice to consumers concerning the defects

associated with the Siding, and refused to fully repair the damage caused by the premature failure(s) of its product.

32.    CertainTeed's response to customers' warranty submissions and other reasonable requests for assistance and compensation is woefully inadequate.

**B.    Defendants Breached Their Warranties and Representations with Plaintiffs and the Class.**

33.    CertainTeed markets and represents that its Siding is "the finest cement siding you can buy" and "the best-looking, finest-performing product of its kind." CertainTeed's marketing materials boast that its Siding has "superior durability" and has a "higher interlaminate bond strength," meaning that it has "superior freeze/thaw protection," and is "engineered for decades of superior protection, wear and durability."

34.    These bold and definitive statements directly contradict the experiences of Plaintiffs and the Class, and amount to substantial misrepresentation of material facts.

35.    CertainTeed provides a limited 50-year warranty that its products will be "free from manufacturing defects." The warranty states that "Certain Teed will pay to repair or replace, at its option, any WeatherBoards Fiber Cement Siding determined to be defective during the 50-year period following its installation" subject to a yearly 2% proration after two years.

36.    In addition, CertainTeed provides a two-year warranty called "SureStart Protection." This warranty provides for the following:

> Under this warranty feature, CertainTeed will pay to repair or replace, at its option, any WeatherBoards Fiber Cement Siding proven to be defective during the two year SureStart Protection period. . . .

-8-

> CertainTeed's maximum liability under SureStart Protection will be
> equal to the reasonable cost to repair or replace the defective material
> at current value, including labor in connection with removal, repair
> or installation of either the original or replacement WeatherBoards
> Fiber Cement Siding.

37.     Plaintiffs' damages far exceed the amounts that CertainTeed has agreed to pay

pursuant to its 50-year warranty.  The Siding on Plaintiffs' homes has and will continue to fail.

Plaintiffs have experienced and will continue to experience gapping, warping, cracking, paint peeling

and chipping, loose nails and Siding pulling away from their homes.  Additionally, the labor costs

of removing and replacing the existing defective Siding are substantial.  The costs of installation are

compounded by other necessary expenses which will be incurred during the construction process.

Consequently, CertainTeed's warranty offer to pay for replacement CertainTeed Siding material is

woefully inadequate.

38.     As a direct and proximate result of purchasing CertainTeed's defective Siding,

Plaintiffs continue to suffer damages in the form of diminution in the value of their homes.  These

damages will continue and will be exacerbated by time as long as CertainTeed's defective Siding

remains on Plaintiffs' homes.

39.     The damages suffered by Plaintiffs were a foreseeable result of CertainTeed's design

and manufacture of a product with the defects discussed herein.  Likewise, the manufacturing,

production, marketing, distribution and sale of its defective product are in the complete control of

CertainTeed and, thus, the defects were foreseeable to Defendant.

40.     CertainTeed has received and continues to receive numerous complaints and claims

from homeowners, property owners, developers and installers regarding the failure of CertainTeed

Siding and, thus, CertainTeed knew, or should have known, that its product was, and is, defective.

41.     CertainTeed has failed to take any steps to notify Plaintiffs and the Class members of the defects in its Siding product and continues to benefit from the sales of its defective product nationwide.

42.     Furthermore, CertainTeed has failed to take steps to adequately compensate Plaintiff and the Class in order to make them whole for the damages that they have suffered, and continue to suffer, resulting from the defective Siding.

### C.     Defendants' Acts and Omissions Have Damaged Plaintiff and the Class.

43.     Upon information and belief, CertainTeed had engaged in a uniform and systematic practice of denying warranty claims.  Specifically, CertainTeed's agents represent that the defects alleged herein constitute normal wear and tear or were installation-related problems.

44.     As a result of the defects and failures alleged herein, Plaintiffs and the Class have suffered actual damages.  The Siding on their homes, buildings, and other structures have and will continue to fail prematurely compared to the time expected by ordinary consumers, the time marketed by CertainTeed, and the time warranted by CertainTeed, resulting in and requiring them to expend large sums of money to repair the damage caused by the defective Siding and to prevent such damage from continuing.

45.     At all relevant times, Defendants had a duty to disclose to Plaintiffs and the Class that the Siding was, and is, defective, prone to foreseeable and uniform problems, such as the problems described herein, and otherwise was inherently flawed in its design such that the Siding was not suitable for use as an exterior building material.

46.     Since the defects in the Siding are latent and not detectable until manifestation, Plaintiffs and the Class members were not reasonably able to discover their Siding was defective until after installation, despite the exercise of due diligence.

47.     The Siding designed, manufactured, produced, marketed, sold, specified, distributed and installed by Defendants is defectively designed and manufactured such that it fails prematurely, causing damage to the property of Plaintiffs and members of the Class and forcing them to repair or replace their siding sooner than reasonably expected, than marketed, and than warranted. Moreover, the Siding is inappropriately specified by Lakewood for use in the construction of the homes it constructed, improperly distributed by Stock, and negligently installed by TK&S.

48.     Plaintiffs seek to recover, for themselves and the Class, the costs of repairing the damage to their property and replacing their Siding, and injunctive relief requiring CertainTeed to replace their defective Siding and modify their warranty claims process to uniformly provide relief in accordance with its obligations under the law.

### TOLLING OF STATUTE OF LIMITATIONS

49.     The statute of limitations applicable to Plaintiffs' and the Class members' claims should be equitably tolled.

50.     Defendants had a duty to disclose that the Siding was defective, unreliable, and inherently flawed in its design and/or manufacture.

51.     Plaintiffs and the Class had no knowledge of, and no reasonable way of discovering the latent defects found in CertainTeed's Siding at the time they purchased their homes and when it was installed on their homes and structures.

52.     Defendants did not notify, inform or disclose to Plaintiffs and the Class that there were defects in the Siding products.

53.     Immediately after discovering the defective nature of the CertainTeed Siding, Plaintiffs adequately notified CertainTeed and participated fully in Defendants' warranty claim process.

54.     Furthermore, CertainTeed representatives fraudulently misrepresented to Plaintiffs and the Class members that the damages they observed were the result of normal wear and tear on the product. Statements such as these constitute an active effort to conceal and misrepresent the true causes of the damage and hide the fact that the product is defective.

55.     Because CertainTeed failed in its duty to notify Plaintiffs and Class members that its product was defective and actively attempted to conceal this fact, the statute of limitations should be tolled on Plaintiffs' claims.

### CLASS ACTION ALLEGATIONS

56.     This action is brought and may be maintained as a class action pursuant to Arkansas Rule of Civil Procedure 23 on behalf of Plaintiffs and all others similarly situated, with the Class defined as follows:

> All individuals and entities that have owned, own, or acquired homes, residences, buildings, or other structures physically located in the Lakewood Subdivision, Washington County, Arkansas, on which CertainTeed WeatherBoards Fiber Cement Siding is or has been installed from January 1, 2007 to the present.

57.     Excluded from the Class are the Defendants, any entity in which Defendants have a controlling interest or which has a controlling interest of Defendants, and Defendants' legal representatives, assigns and successors.

-12-

58.     Plaintiffs reserve the right to re-define the Class(es) prior to class certification.

59.     Because the proposed Class likely includes numerous persons, joinder is impracticable. The true number of Class members is likely known by Defendants.  Disposition of the Plaintiffs' and Classes' claims in single class action will provide substantial benefits to all parties and the Court.

60.     There are numerous questions of law and fact common to Plaintiffs and the Class. Those questions predominate over any questions that may affect individual Class members, and include the following:

a.     Whether CertainTeed Siding is subject to shrinking, warping, gapping, cracking, paint chipping, delaminating, and separating from structures and is not suitable for use as an exterior siding product;

b.     Whether CertainTeed's Siding is defectively designed or manufactured;

c.     Whether Defendants knew or should have known of the defective nature of its Siding before placing it into the stream of commerce for purchase and use by Plaintiffs and the Class;

d.     Whether Defendants owed a duty to Plaintiffs and the Class to exercise reasonable and ordinary care in the formulation, production, testing, design, manufacture, warranting, marketing, specification, distribution, and installation of the Siding;

e.     Whether Defendants breached their duty to Plaintiffs and the Class by designing, manufacturing, producing, marketing, advertising, selling,

-13-

specifying, distributing and installing defective Siding to Plaintiffs and the Class;

f.   Whether Defendants breached their duty to Plaintiffs and the Class to promptly remove the defective Siding from the marketplace or take other appropriate remedial action;

g.   Whether the Siding failed to perform in accordance with the reasonable expectations of ordinary consumers such as Plaintiffs and the Class;

h.   Whether CertainTeed's Siding fails to perform as advertised, marketed and warranted;

i.   Whether Defendants breached their expressed warranties to Plaintiffs and the Class by advertising, marketing, selling, specifying, distributing and installing defective Siding to Plaintiffs and the Class and refusing to cover the full costs associated with replacing the defective Siding;

j.   Whether Defendants breached their implied warranties to Plaintiffs and the Class by advertising, marketing, selling, specifying, distributing and installing Siding that was not of a merchantable quality, nor fit for the ordinary purpose for which it was sold, and refusing to cover the full costs associated with replacing the defective Siding; and

k.   Whether Plaintiffs and the Class are entitled to compensatory damages, and the amount of the costs of removal and replacement of the defective Siding, and for damages resulting from the diminution of value of Class Members' homes and other structures.

-14-

l.      Whether TK&S negligently installed the Siding.

m.      Whether Lakewood negligently specified the Siding for use in the construction of homes purchased by Plaintiffs and the Class.

n.      Whether Stock is liable to Plaintiffs and the Class by reason of its distribution of the Siding.

61.     The claims of the Plaintiffs are typical of the claims of the Class in that the Plaintiffs, and all Class members, own homes, residences, or other structures on which defective Siding manufactured by CertainTeed has been installed. The Defendants' Siding has failed, and will continue to fail, prematurely. The Plaintiffs, like all Class members, have been damaged by Defendants' conduct in that they have incurred or will incur the costs of repairing or replacing their siding and repairing the additional property damaged by the Siding's premature failure. Furthermore, the factual bases of Defendants' conduct is common to all Class members and represents a common thread of deliberate, fraudulent, and negligent misconduct resulting in injury to all members of the Class.

62.     Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have retained counsel with substantial experience in prosecuting national consumer class actions, actions involving defective products, and specifically, actions involving defective construction materials. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Class they represent, and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to those of the Class.

63.     Plaintiffs and the members of the Class have suffered and will continue to suffer harm and damages as a result of Defendants' conduct. A class action is superior to other available

-15-

methods for the fair and efficient adjudication of this controversy.  Absent a class action, the vast majority of the Class members likely would find the cost of litigating their claims to be prohibitive and would have no effective remedy at law.  Because of the relatively small size of the individual Class members' claims, it is likely that only a few Class members could afford to seek legal redress for Defendants' conduct.  Further, the cost of litigation could well equal or exceed any recovery.  Absent a class action, Class members will continue to incur damages without remedy.  Class treatment of common questions of law and fact would also be superior to multiple individual actions or piecemeal litigation, in that class treatment would conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

64.     Due to the relatively small size of the typical individual Class member's claims, and because most homeowners and/or property owners have only modest resources, it is unlikely that individual Class members could afford to seek a full and fair recovery against Defendants on their own.  This is especially true in light of the size and resources of CertainTeed and its parent corporation, Saint-Gobain.  A class action is, therefore, the only reasonable means by which Class members can obtain relief from Defendants.

## CAUSES OF ACTION

## COUNT I

## CLAIM FOR RELIEF FOR
## BREACH OF EXPRESS WARRANTY

65.     Plaintiffs and the Class members repeat and re-allege each and every allegation contained above in support of their cause of action for breach of express warranty.

66.    CertainTeed marketed and sold its Siding into the stream of commerce with the intent that the Siding would be purchased by Plaintiffs and members of the Class.

67.    Through its written warranties, brochures, and marketing materials regarding the durability and quality of the Siding, CertainTeed created express warranties which became part of the basis of the bargain with Plaintiffs and the members of the Class.

68.    CertainTeed expressly warranted to Plaintiffs and Class Members that the structural integrity of the Siding purchased by Plaintiffs and Class members would last at least 50 years.

69.    CertainTeed breached its express warranties to Plaintiffs and the Class in that Defendants' Siding did not, and does not, maintain its structural integrity and perform as promised. Defendants' Siding cracks, splits, warps, discolors, shrinks, falls off the structure, deteriorates prematurely, and otherwise does not perform as warranted by Defendants.

70.    CertainTeed's warranties fail their essential purpose because they purport to warrant that the Siding will be free from structural breakdown for at least 50 years when, in fact, Defendants' Siding falls far short of the applicable warranty period.  To the contrary, due to the inclusion of fly ash in the Siding, CertainTeed's Siding begins failing after only several years' use and, in some instances, within a shorter time frame.

71.    Moreover, because the warranties limit Plaintiffs' and Class members' recovery to replacement of the Siding piece by piece, with replacement labor not included, CertainTeed's warranties are woefully inadequate to repair and replace failed siding, let alone any damage suffered to the underlying structure due to the inadequate protection provided by the product.  The remedies available in Defendants' warranties are limited to such an extent that they do not provide a minimum adequate remedy.

-17-

72.     The limitations on remedies and the exclusions in Defendants' warranties are unconscionable and unenforceable.

73.     Defendants have denied or failed to pay in full the warranty claims or have not responded to warranty claims.

74.     Under the "SureStart Protection" feature of CertainTeed's warranty, CertainTeed will cover the costs of labor to remove and replace defective Siding for a period of two years after purchase. This level of coverage is wholly inadequate to protect or make whole Plaintiffs, who are now outside the two-year warranty period, although the defective nature of the Siding they purchased was known by CertainTeed while the Siding was being marketed and sold by CertainTeed. The warranty also fails to compensate Plaintiffs for the damage to their homes caused by the defective Siding, and does not compensate for the diminution in value of Plaintiffs' and the Class members' homes and structures. The limitations on remedies and the exclusions in CertainTeed's warranties are unconscionable and unenforceable.

75.     As a result of Defendants' breach of its express warranties, Plaintiffs and the Class have suffered actual damages in that they purchased and installed on their homes and other structures an exterior siding product that is defective and that has failed or is failing prematurely due to moisture penetration and porosity problems. This failure has required or is requiring Plaintiffs and the Class to incur significant expense in repairing or replacing their siding. Replacement is required to prevent on-going and future damage to the underlying structures or interiors of Plaintiffs' and Class members' homes and structures.

76.     Upon information and belief, Lakewood issued an express warranty to all Plaintiffs and members of the Class who purchased their homes from Lakewood in the Lakewood Subdivision.

-18-

77.     By reason of the allegations set forth herein, Defendants have breached their warranty to Plaintiffs and the Class and are liable to Plaintiffs and the Class for breach of warranty.

78.     Plaintiffs, on behalf of themselves and all others similarly situated, demand judgment against Defendants for compensatory damages themselves and each member of the Class, for the establishment of a common fund, plus attorneys' fees, interest and costs.

## COUNT II

### CLAIM FOR RELIEF FOR
### BREACH OF IMPLIED WARRANTIES OF MERCHANTABILITY
### AND FITNESS FOR A PARTICULAR PURPOSE

79.     Plaintiffs incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint.

80.     Because CertainTeed extended an express warranty for the Siding to Plaintiffs and the Class, privity of contract exists between CertainTeed and Plaintiffs and the Class.

81.     CertainTeed manufactured and sold its Siding to Plaintiffs and the Class members, and, in so doing, impliedly warranted to them that the product was of merchantable quality and fit for its intended use.

82.     However, CertainTeed's Siding was not of merchantable quality and was not fit for its intended use due to the defects the Siding contains.

83.     As described herein, CertainTeed's defective Siding failed in numerous ways. These serious failures make the Siding unfit and inappropriate for its intended use as a covering for building exteriors.

84.   By reason of the allegations set forth herein, Defendants have breached their implied warranties of merchantability and fitness for a particular purpose and are liable therefore to Plaintiffs and the Class.

85.   The Siding is also unfit for its particular purpose.  Certain Teed manufactured its Siding for climates with multiple seasons, including cold weather seasons.  CertainTeed knew, or should have known, that its Siding would be subjected to varying temperatures, and weather conditions, including freeze-thaw cycles, throughout each year.

86.   After Plaintiffs were made aware of the cracking and warping sustained by his Siding, they gave proper notice to CertainTeed.

87.   CertainTeed failed to provide an adequate remedy and added additional terms to the warranties.

88.   As a result, Defendants breached their implied warranties to Plaintiffs and Class members by producing, manufacturing, distributing, installing and selling them a defective product that was unfit for its intended use and for a particular purpose.

89.   Plaintiffs and the Class members suffered and will continue to suffer losses as alleged herein, in an amount to be determined at trial.

90.   Plaintiffs, on behalf of themselves and all others similarly situated, demand judgment against Defendants for compensatory damages for themselves and each member of the Class, the establishment of a common fund, plus attorneys' fees, interest and costs.

## COUNT III

## NEGLIGENCE

91.     Plaintiffs incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint.

92.     Defendants had a duty to Plaintiffs and the Class to exercise reasonable and ordinary care in the formulation, testing, design, manufacture, marketing, specification, distribution and installation of the Siding.

93.     Defendants breached their duty by producing, selling, specifying, distributing and negligently installing a defective product to Plaintiffs and the Class members. As described herein, CertainTeed's defective Siding has failed in numerous ways, including shrinking, warping, gapping, cracking, chipping, delaminating, and separating from structures.

94.     Defendants further breached their duty by failing to notify Plaintiffs and the Class members of the defects in the Siding they were purchasing and installing, and by failing to take any remedial action once Defendants were on notice that the product was defective.

95.     Defendants knew or should have known that the Siding was defective, would fail prematurely, was not suitable for use as an exterior siding product, and otherwise was not as warranted and represented by Defendants.

96.     Defendant TK&S negligently installed the Siding in that it incorrectly fastened and attached the siding to the homes purchased by Plaintiffs and failed to use appropriate clearances and flashings while installing the siding.

97.     It was also completely foreseeable to CertainTeed that Plaintiffs and the Class members would rely upon CertainTeed's marketing claims of long-term durability and a supposedly inclusive warranty when purchasing CertainTeed Siding.

98.     As a direct and proximate cause of Defendants' negligence, Plaintiffs and the Class have suffered actual damages in that they purchased and had installed on their homes, residences, buildings, and other structures an exterior siding product that is defective and that fails prematurely due to water absorption, porosity problems, moisture penetration and other inherent defects.  On information and belief, the Siding was negligently designed, specified, distributed and installed by Defendants.  On information and belief, the defect has caused damage to Class members' existing homes, residences, buildings, and other structures, in addition to damage to the Siding itself, by allowing moisture to enter through the siding.  These failures have caused and will continue to cause Plaintiffs and the Class to incur expenses repairing or replacing their siding as well as the resultant progressive property damage.

99.     Plaintiffs, on behalf of themselves and all others similarly situated, demand judgment against Defendants for compensatory damages for himself and each member of the Class, for establishment of a common fund, plus attorney's fees, interest and costs.

## COUNT IV

## CLAIM FOR RELIEF FOR
## UNJUST ENRICHMENT

100.    Plaintiffs incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint.

-22-

101.     Substantial benefits have been conferred on Defendants by Plaintiffs and the Class by purchasing CertainTeed Siding, and Defendants have knowingly and willingly accepted and enjoyed these benefits.

102.     Certain Teed either knew or should have known that the payments rendered by Plaintiffs and the Class were given and received with the expectation that the CertainTeed Siding would perform as represented and warranted. For CertainTeed to retain the benefit of the payments under these circumstances is inequitable.

103.     Defendants' acceptance and retention of these benefits under the circumstances make it inequitable for Defendants to retain the benefit without payment of the value to the Plaintiffs and the Class.

104.     Plaintiffs and the Class are entitled to recover from Defendants all amounts wrongfully collected and improperly retained by Defendants, plus interest thereon.

105.     As a direct and proximate result of CertainTeed's wrongful conduct and unjust enrichment, Plaintiffs and the Class are entitled to an accounting, restitution from, and institution of, a constructive trust disgorging all profits, benefits, and other compensation obtained by CertainTeed, plus attorneys' fees, costs, and interest thereon.

## COUNT V

### CLAIM FOR RELIEF FOR
### STRICT LIABILITY AND NEGLIGENCE – DESIGN DEFECT

106.     Plaintiffs incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint.

-23-

107.   At all times relevant to this Complaint, CertainTeed was engaged in the design, manufacture, and sale of the Siding.

108.   The Siding was defectively designed to, among other things, include coal fly ash, and posed a substantial likelihood of harm including the risk of cracking, splitting, warping, shrinking and deteriorating prematurely, at the time it was sold.

109.   Were the design defects known at the time of the manufacture, a reasonable person would conclude that the utility of the product did not outweigh the risk inherent in marketing a product designed in that manner.

110.   Because CertainTeed defectively designed the Siding to include coal fly ash and reduced the amount of cement in the product, the Siding was unreasonably dangerous to the Plaintiffs' properties and to the proposed Class members' properties at the time CertainTeed sold the Siding for its intended use on customers' structures.

111.   Feasible alternatives existed to make the Siding safer for its intended use at the time of its design.  CertainTeed was very knowledgeable about the product and aware that feasible alternatives existed that would maintain the usefulness of the Siding and eliminate the harm.

112.   The defectively designed siding reached consumers without substantial and/or significant changes in the condition as CertainTeed sold it.  CertainTeed knew that the Siding would reach consumers without a substantial and/or significant change.

113.   The defective Siding causes, among other damages and expense, structural damage and repair and replacement costs.

114.   The injuries caused to Plaintiffs and the putative Class as a result of the defective Siding could and should have been reasonably foreseen by CertainTeed.

-24-

115.    Because of CertainTeed's defective design of the Siding, Plaintiffs and the putative Class members have been, currently are and will be damaged in an amount to be determined at trial.

116.    Defendants are liable to Plaintiffs and the Class on account of their defective design, specification, distribution and installation of the Siding used in the construction of Plaintiffs' and the Classes' homes.

## COUNT VI

### CLAIM FOR RELIEF FOR
### DECLARATORY AND INJUNCTIVE RELIEF BROUGHT BY PLAINTIFFS
### ON BEHALF OF THEMSELVES AND OTHERS SIMILARLY SITUATED

117.    Plaintiffs incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint.

118.    Plaintiffs, on behalf of themselves and putative Class members, seek a Court declaration of the following:

a.    All Defendant's Siding manufactured from 2002 until the present has defects which cause it to fail, resulting in water damage to property and the necessity of the removal and replacement of the Siding;

b.    All Defendant's Siding manufactured from 2002 until the present has a defect in workmanship and material that causes failures;

c.    Defendant knew of the defects in its Siding and that the limitations contained in its purported limited warranties are unenforceable;

d.    Defendant shall re-audit and reassess all prior warranty claims on their Siding, including claims previously denied in whole or in part, where the denial was based on warranty or other grounds; and

c.      Defendant shall establish an inspection program and protocol to be communicated to Class members, which will require CertainTeed to inspect, upon request, a Class member's structure to determine whether a Siding failure is manifest.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, Ann Hocutt, Heather A. Hawkins, Martin Smith and Linda Smith, his wife, and Libby Gibson, on behalf of themselves and all others similarly situated, request the Court to enter judgment against CertainTeed, as follows:

a.      an Order certifying the Class or Classes, appointing Plaintiffs as the Class Representatives, and appointing the undersigned counsel as Class Counsel;

b.      Declare that CertainTeed is financially responsible for notifying all Class members of the problems with CertainTeed Siding;

c.      An award of equitable and injunctive relief enjoining Defendant from pursuing the policies, acts and practices described in this Complaint;

d.      Enter an order that all Defendant's Siding manufactured from 2002 until the present has defects which cause it to fail and leak, resulting in water damage to property and the necessity of the removal and replacement of the Siding; all Defendant's Siding manufactured from 2002 until the present has a defect in workmanship and material that causes failures; that Defendant knew of the defects in its Siding in that the limitations contained in its purported limited warranties are unenforceable; Defendant shall re-audit and reassess all prior warranty claims on their Siding, including claims previously denied in whole or in part, where the denial was based on warranty or other grounds; and Defendant shall establish an inspection program and protocol to be

communicated to Class members, which will require CertainTeed to inspect, upon request, a Class member's structure to determine whether a Siding failure is manifest.

      e.     Declare that CertainTeed must account and disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale of CertainTeed materials, or order CertainTeed to make full restitution to Plaintiffs and the members of the Class;

      f.     Enter an award of attorneys' fees and costs, as allowed by statute and law;

      g.     Enter an award of pre-judgment and post-judgment interest, as provided by statute and law;

      h.     Grant Plaintiffs and the Class leave to amend the Complaint to conform to the evidence produced at trial; and

      i.     Grant such other or further relief as may be appropriate under the circumstances.

**JURY DEMAND**

Plaintiffs, on behalf of themselves and the Class members, hereby demand a jury trial on all issues so triable.

Respectfully submitted,

BEQUETTE & BILLINGSLEY, P.A.
425 West Capitol Avenue, Suite 3200
Little Rock, AR 72201-3469
Phone: (501) 374-1107
Fax:    (501) 374-5092

By:_____
    Jay Bequette, #87012

*Attorneys for Plaintiffs*

-27-

US POSTAGE
$11.530
neopost
01/16/2011
Mailed From 72201

045J83098656

FIRST CLASS MAIL

CERTIFIED MAIL™

7009 1410 0000 1976 6645

*The Law Firm of*
**BEQUETTE & BILLINGSLEY**
*A Professional Association*

Metropolitan National Bank Tower
425 West Capitol Avenue, Suite 3300
Little Rock, Arkansas 72201-3469

TO:   CertainTeed Corporation
      % The Corporation Company, Registered Agent
      124 West Capitol Avenue, Suite 1900
      Little Rock, AR 72201

Return Postage Guaranteed










